UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ronald Satish Emrit

    v.                                      Case No. 17-cv-489-PB

William M. Gardner,
Secretary of State, and
New Hampshire Democratic Party

**REPORT AND RECOMMENDATION**

Plaintiff Ronald Satish Emrit, proceeding in forma pauperis, has filed a second amended complaint, doc. No. 5, that is before this court for preliminary review, pursuant to LR 4.3(d) and 28 U.S.C. § 1915(e)(2). Plaintiff's allegations fail to state a claim for relief. The district judge should therefore dismiss the complaint.[1]

---

[1] Although not dispositive, the court notes that other federal district courts have uniformly rejected nearly identical complaints plaintiff has filed. See Emrit v. Dunlap, No. 1:17-cv-402-GZS, 2018 WL 1321567 (D. Me. Mar. 14, 2018), appeal dismissed, No. 18-1221, 2018 WL 4381529 (1st Cir. June 12, 2018); Emrit v. Oliver, No. 17cv1024 JCH/GBW, 2018 WL 626254 (D.N.M. Jan. 30, 2018), aff'd, 735 F. App'x 501 (10th Cir. 2018); Emrit v. Gale, No. 4:17CV3133, 2018 WL 618414 (D. Neb. January 29, 2018); Emrit v. Kobach, No. 17-CV-2593-CM-GLR, 2018 WL 878959 (D. Kan. Jan. 24, 2018) (rep. and rec., aff'd Feb. 13, 2018); Emrit v. Sec'y of State of Haw., No. 17-00504 DKW-RLP, 2018 WL 264851 (D. Haw. Jan. 2, 2018); Emrit v. Simon, No. 17-CV-4605 (SRN/SER), 2017 U.S. Dist. LEXIS 193755 (D. Minn. Nov. 14, 2017) (rep. and rec., aff'd Dec. 8, 2017); Emrit v. Murray, No. 2:17-CV-174-SWS, 2017 U.S. Dist. LEXIS 193944 (D. Wyo. Oct. 31, 2017); Emrit v. Lawson, No. 1:17-cv-03624-JMS-TAB, 2017 WL 4699279 (S.D. Ind. Oct. 19, 2017), appeal dismissed, No. 17-3322, 2018 WL 2144109 (7th Cir. Feb. 6, 2018).

## I. Preliminary Review Standard

The magistrate judge conducts a preliminary review of pleadings filed in forma pauperis. See LR 4.3(d). The magistrate judge may recommend to the district judge that one or more claims be dismissed if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d). In conducting its preliminary review, the court construes pro se complaints liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). The complaint must contain sufficient factual matter, accepted as true, to state a claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim[,]" Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner in which the defendant

subjected the plaintiff to a harm for which the law affords a remedy. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II. Plaintiff's Allegations

Plaintiff has sued New Hampshire Secretary of State William M. Gardner and the New Hampshire Democratic Party. He asserts that they violated various constitutional and statutory rights by refusing to place him on the 2016 presidential primary and general election ballots. He seeks damages for the alleged 2016 violations and an injunction mandating his placement on the ballot in 2020.

The operative, second amended complaint, consists of 24 pages and 89 paragraphs of often-scattershot digressions. Much of the complaint has no apparent relationship to the defendants or to the relief plaintiff ultimately seeks, but instead addresses such diverse matters as plaintiff's mental illness, international travel, divorce case in Florida, bankruptcy, law school curriculum, and contacts with FBI and CIA agents about his psychic abilities which, he asserts, he can use to help those agencies. As relevant to his suit, Emrit alleges that he:

- was a Democratic candidate for President in 2016;
- was placed on an official ballot only in Palm Beach County, Florida;

3

- was told by several secretaries of state that in order to get placed on the ballot in the primary or general election, he would have to get a minimum number of petitions signed from the constituents of each jurisdiction in which he wanted to run for president in the general election.

Plaintiff does not allege that he contacted either of the defendants or their representatives. Although plaintiff alleges that he filed as a candidate with the Federal Elections Commission, he does not allege any facts as to other steps he took, if any, to qualify as a candidate for president in New Hampshire during 2016. Construing his complaint liberally, however, the court will proceed, for purposes of this review, as though defendant Gardner was one of the "several secretaries of state" who informed plaintiff of ballot signature requirements.

### III. Claims

Plaintiff asserts that New Hampshire's signature requirements violated: 1) his right to equal protection under the Fifth and Fourteenth Amendments; 2) his substantive due process rights under the Fifth and Fourteenth Amendments; and 3) Title VII of the Civil Rights Act of 1964, which, he asserts, protects his right to run for president.

4

## IV. **Analysis**

### A. New Hampshire Election Laws

New Hampshire election law provides three methods of nominating a candidate for placement on a general election ballot. Libertarian Party N.H. v. New Hampshire, 154 N.H. 376, 378 (2006). The first is by a party's primary. Id.; N.H. Rev. Stat. Ann. § 652:11. "As an alternative to nomination by party primary, a candidate may have his or her name placed on the ballot for the state general election by submitting the requisite number of nomination papers." N.H. Rev. Stat. Ann. § 655:40. Presidential candidates using this process must present the signatures of 3,000 registered voters — 1,500 from each congressional district in the state. Id. § 655:42(I).

A party's candidate for elective office is chosen in a primary election conducted according to the same procedures used for the general election, except as otherwise provided. Id. § 655:35. Prospective candidates for party nomination secure a place on the primary ballot by, inter alia, filing a specified number of signed primary petitions. Id. § 655:19-c, I, III.

The court addresses each of plaintiff's claims in turn.

### B. Validity of Signature Requirements

The court first considers whether ballot signature requirements may be deemed constitutionally valid. Generally

5

speaking, "[t]he Elections Clause gives states authority 'to enact the numerous requirements as to procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved.'" U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 834 (1995) (quoting Smiley v. Holm, 285 U.S. 355, 366 (1932)). States are thus entitled to adopt "generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." Anderson v. Celebrezze, 460 U.S. 780, 788 n.9 (1983).

More specifically, the Court has repeatedly observed that states can require candidates to demonstrate a preliminary showing of support. See, e.g., Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986) ("modicum of support among the potential voters for the office"); Anderson, 460 U.S. at 788-89 n.9 ("preliminary showing of substantial support"); Am. Party of Texas v. White, 415 U.S. 767, 782 (1974) ("significant, measurable quantum of community support"); Lubin v. Panish, 415 U.S. 709, 715 (1974) ("serious candidates with some prospects of public support"); Jenness v. Fortson, 403 U.S. 431, 442 (1971) ("significant modicum of support"); see also Ill. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 183-84 (1979) ("A procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and

6

motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to impede the electoral process.") (quoting Lubin, 415 U.S. at 715).  The Supreme Court has upheld, for example, challenges to signature requirements, even those equaling five percent of the eligible voting base.  Am. Party of Tex. v. White, 415 U.S. at 789 ("Demanding signatures equal in number of 3% or 5% of the vote in the last election is not invalid on its face . . . ."); Jenness, 403 U.S. at 438 ("[W]e cannot say that Georgia's 5% petition requirement violates the Constitution.").  Nothing plaintiff pleads here suggests that New Hampshire's ballot signature requirements would not similarly pass muster under the Elections Clause.  The court next turns to plaintiff's claimed constitutional violations.

   C.  Due Process (Count 2)

Emrit asserts that New Hampshire's signature requirements violate his substantive and procedural due process rights.  He alleges that he was deprived of an opportunity to run for president in 2016, which he asserts was his right as an American citizen, and that there is no compelling government objective in requiring him to obtain a minimum number of petitions/signatures in order to be placed on the ballot.  He adds that, "[a]t the very least, the plaintiff should have been given notice and a

7

hearing with regards to his not being placed on the 2016 ballot . . . and he should be given a notice and a hearing in the future if he will be excluded from the ballot in 2020."

The Due Process Clause provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  To state a procedural due process claim, a plaintiff the "plaintiff must allege facts which, if true, establish that the plaintiff (1) had a property interest of constitutional magnitude and (2) was deprived of that property interest without due process of law. Clukey v. Town of Camden, 717 F.3d 52, 54-55 (1st Cir. 2013).

Emrit has failed to allege a plausible procedural due process claim.  He does not have a protected interest in having unrestricted access to the primary and general election ballots in New Hampshire.  See Tiraco v. N.Y State Bd. Of Elections, 963 F. Supp. 2d 184, 194 (E.D.N.Y. 2013) ("An individual has no property or liberty interest in an elected office.  Nor does he have such an interest in being elected, or in appearing on a ballot.") (citation and internal quotations marks omitted).  In the absence of such a protected interest, plaintiff fails to state a procedural due process claim.

Plaintiff's substantive due process claim also fails as there are no allegations of any conduct by defendants that would shock the conscience.  See Cty. of Sacramento v. Lewis, 523 U.S.

8

833, 845-46 (1998) (observing that substantive due process claims involve only the most "egregious official conduct" that "shocks the conscience."). Compliance with generally applicable, valid state laws is not such behavior. Indeed, "[e]ven bad faith violations of state law are not necessarily tantamount to unconstitutional deprivations of due process." Farris v. Poore, 841 F. Supp. 2d 436, 441 (D. Me. 2012) (citing Chongris v. Bd. of Appeals of Town of Andover, 811 F.2d 36, 43 (1st Cir. 1987)). Accordingly, Count 2 should be dismissed.

### D. Equal Protection (Count 1)

While signature requirements are, in and of themselves, generally deemed to be valid, the right to equal protection may be threatened if they "fall unequally on similarly situated candidates." Libertarian Party of Me. v. Diamond, 992 F.2d 365, 370 (1st Cir. 1993). A claimed equal protection violation "must be grounded in a showing of substantial discrimination." Barr v. Galvin, 626 F.3d 99, 109 (1st Cir. 2010).

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause essentially directs "that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). To

plead a viable equal protection claim, a plaintiff must allege facts indicating selective treatment "compared with others similarly situated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (emphasis omitted). The operative complaint fails to satisfy this requirement.

As he did in connection with his due process claims, Emrit, an African-American, claims that there is no compelling government objective in requiring him to obtain a minimum number of petitions/signatures in order to be placed on the ballot. He does not challenge the specific number of petitions or signatures required. Instead, he disagrees with having to submit any petitions. But, as the court has noted, such measures have repeatedly passed constitutional muster. Emrit fails to allege any facts that show he was, or would be, treated differently from those who are not African-American by being required to provide a certain number of petition signatures to be placed on an election ballot. As he has not grounded his claim in any showing of race-based discrimination, the district judge should dismiss plaintiff's equal protection claim.

### E. Title VII (Count 3)

Count Three, asserting violations of Title VII of the Civil Rights Act of 1964, fails to state a claim against either defendant because Title VII prohibits unlawful <u>employment</u> practices.  <u>See</u> 42 U.S.C. § 2000e-2.  The plaintiff does not, allege that either defendant is or was his employer.  Count 3, therefore, should be dismissed.

### F. State Action

Finally, the amended complaint fails to state a claim against the New Hampshire Democratic Party for violations of Emrit's federal constitutional rights for the additional reason that it alleges no facts from which one reasonably could conclude that the New Hampshire Democratic Party acted under color of state law.  <u>See</u> <u>Missert v. Trs. of Boston Univ.</u>, 73 F. Supp. 2d 68, 70-73 (D. Mass. 1999) (dismissing plaintiff's claims of due process and equal protection violations against private institution that was not engaged in state action).

Political parties are private parties, and "[p]rivate parties are largely unrestrained by the constitution[.]" <u>King v. Friends of Kelly Ayotte</u>, 860 F. Supp. 2d 118, 121, 124-25 (D.N.H. 2012) (holding that, for purposes of plaintiff's claim of violation of his First Amendment rights, conduct of political

defendants, including New Hampshire Republican State Committee, was not state action).

A private party may be considered come a state actor if that party "assumes a traditional public function when performing the challenged conduct; or if the challenged conduct is coerced or significantly encouraged by the state; or if the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." Santiago v. Puerto Rico, 655 F.3d 61, 68-69 (1st Cir. 2011) (citation and internal punctuation omitted).  But Emrit alleges no facts suggesting that the New Hampshire Democratic Party engaged in any conduct affecting him, let alone conduct that could be construed as state action.  The exceptions to the state action requirement do not apply here.

## IV. Conclusion

For the foregoing reasons, the district court should dismiss this action in its entirety for failure to state a claim upon which relief can be granted.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The objection period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the

district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                                                */s/ Andrea K. Johnstone*
                                                                                Andrea K. Johnstone
                                                                                United States Magistrate Judge

November 27, 2018

cc:   Ronald Satish Emrit, pro se